**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AIDA R. GIL<br>(Plaintiff)<br><br>v.<br><br>605 WEST 42ND OWNER LLC, THE MOINIAN GROUP and JULIO DEL ORBE<br>(Defendants) | ) | Civil Action No.:<br>25 CV 5396<br><br>COMPLAINT FOR VIOLATION OF FAIR HOUSING ACT (FHA), 42 U.S.C. § 3601 ET SEQ. |

2025 JUN 30 AM 8: 56
RECEIVED
SDNY PRO SE OFFICE

**PARTIES**

1. Plaintiff Aida R. Gil is a resident of New York County, New York, and a qualified individual with a disability under the Americans with Disabilities Act ("ADA").

2. Defendant 605 West 42nd Owner LLC owns and operates the residential building located at 605 West 42nd Street, New York, New York, 10036, where Plaintiff resides.

3. Defendant The Moinian Group is the parent company of 605 West 42nd Owner LLC.

4. Defendant Julio Del Orbe is employed by 605 West 42nd Owner/The Moinian Group in the capacity of Senior Residential Manager of 605 West 42nd Street. In this role, he oversees building repairs and works with contractors to make necessary repairs.

5. All defendants are jointly and severally liable for the violations alleged herein. Individual defendants are sued in both their individual and official capacities.

**JURISDICTION**

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as this action arises under federal statutes including 42 U.S.C. §§ 3601, 3602(h), 3604(f), and 3617 of the Fair Housing Act.

7. Venue is proper in this district because the events giving rise to this claim occurred in New York County.

**FACTUAL ALLEGATIONS**

8. In December 2023, Plaintiff was medically diagnosed with Asthmatic Allergic Rhinitis, which impairs her capacity to breathe without medication. Breathing is a major life activity.

9. At the time of diagnosis and after evaluation, Plaintiff's allergist commented that Plaintiff had the lung capacity of a 70-year-old, although the plaintiff was 38 years old.

10. In addition to allergy medications, Plaintiff was prescribed Trelegy Ellipta, a combination of three medications used to manage long-term breathing conditions such as asthma or COPD. Trelegy reduces inflammation and keeps airways open to facilitate easier breathing; it is not intended for quick relief during asthma attacks.

11. Plaintiff was also diagnosed as allergic to mice.

12. In February 2025, Plaintiff was diagnosed Eustachian Tube Dysfunction (ETD) linked to Allergic Rhinitis. ETD impairs auditory processing and hearing is a major life activity.

13. To date, Plaintiff is not able to breathe with ease unless she takes her daily asthma and allergy medication. She also takes medication to address her ETD and mild vocal edema caused by persistent coughing and her medication.

14. In or around December 2024 or January 2025, Defendant 605 West 42nd Owner LLC filed a nonpayment proceeding against her (LT-300670-25/NY)

15. On January 30, 2025, Plaintiff emailed Defendant's building management citing habitability issues in her apartment, including a nonfunctional oven, a mouse infestation, nonfunctional heating, key card access issues, and a nonfunctional toilet. These were raised as defenses against the nonpayment proceeding.

16. In that same email, Plaintiff wrote, "As I am allergic to mice, I have been experiencing respiratory issues, which may be aggravated by [the mice's] presence," thereby alerting management to the health consequences of the infestation.

17. On February 3, 2025, Plaintiff filed an HP Action against the Defendant 605 West 42nd Owner LLC , adding "poor air quality/allergens" to the list of habitability violations she believed were occurring in her apartment. The accompanying Tenant request for HP inspection also noted possible mold in her bathroom. (HP-000203-25/NY)

18. On February 9, 2025, Plaintiff sent Defendants' building management an email, stating, "Along with the mold in my bathroom, **this mice infestation poses serious health risks for me, as I suffer from allergic rhinitis and asthma and am allergic to mice.** Given these concerns, is it possible for a licensed exterminator to be scheduled to assess and address the problem as soon as possible? And for someone to please ensure that all entry points are sealed to prevent further infestations?"

19. Around February 20, 2025, Plaintiff expressed to maintenance staff visiting her apartment for other repairs that she believed the vent in the contributed to the onset of her respiratory issues. After finding that the vent was indeed very dirty and full of debris, building maintenance staff cleaned out the bathroom vent,

20. That same week, Plaintiff was provided with a functional oven and a new heating system. Building management also gave her multiple opportunities to register for Thursday extermination services, which she utilized.

21. On February 21, 2025, an NYC Housing Preservation & Development (HPD) inspector visited Plaintiff's apartment.

22. On March 4, 2025, HPD issued an Open Violation Summary listing one Class B violation for loose baseboards.

23. The same report listed two Class C violations—for a mouse infestation and a defective self-closing door. Class C violations are considered "immediately hazardous."

24. On March 5, 2025, Plaintiff and Defendant 605 West 42nd Owner LLC entered a stipulation agreement for building staff to remedy violations on March 12 and 13, 2025—including loose baseboards, a bedroom wall crack, a laundry closet leak, mouse extermination, and a defective self-closing door.

25. Maintenance staff resolved the loose baseboard violation and sent an exterminator to apply traps and gel.

26. Staff inspected the bedroom wall crack and promised to paint it but never returned. They also examined the laundry closet leak and claimed moisture was impossible because of waterproof sheetrock.

27. On March 14, 2025, Plaintiff hired Atech Inspections, a mold remediation specialist, to examine stored debris and a previously leaky wall. Though no mold was detected in the sample, the inspector noted the bathroom vent lacked an

adequate filter, and the brown spot in the laundry closet showed signs of moisture that needed monitoring.

28. Later that month, Plaintiff consulted an asthma specialist. Despite initial symptom relief, the pulmonologist confirmed a diagnosis of asthma, independent of allergies. Asthma is incurable and managed only through medication and lifestyle adjustments.

29. On April 3, 2025, Housing Court Judge Alberto Gonzalez ordered all outstanding violations to be remediated, with access dates set for April 10 and April 24, 2025.

30. On the same date, HPD's attorney gave Plaintiff and Defendants' attorney a copy of the regulations for Integrated Pest Management, which in accordance with Administrative Code §27-2017.8 of Local Law 55 of 2018 and 28 RCNY §54-04, require:

    a. Inspection for, and physically remove pest nests, waste, and other debris by High Efficiency Particulate Air (HEPA) vacuuming, washing surfaces, or otherwise collecting and discarding such debris;
    b. Elimination of points of entry and passage for pests by repairing and sealing any holes, gaps or cracks in walls, ceilings, floors, molding, base boards, around pipes and conduits, or around and within cabinets by using sealants, plaster, cement, wood, escutcheon plates, or other durable material;
    c. Elimination of sources of water for pests by repairing drains, faucets, and other plumbing materials that accumulate water or leak;
    d. Removing and replacing saturated materials in interior walls;
    e. Attaching door sweeps to any door leading to a hallway, basement, or outside the building to reduce gaps to no more than one-quarter inch;
    f. Using pesticides sparingly, and only when applied by a NYS-licensed pest professional, with pesticides only applied by a pest professional licensed by New York State Department of Environmental Conservation (DEC).
    g. Use of pesticides cannot and does not replace the need to use integrated pest management practices to address the infestation.

31. On April 10, 2025, maintenance installed a door sweep, but it was too low, preventing the door from self-closing when opened beyond 45 degrees.

32. That day, two exterminators visited Plaintiff's apartment. Juan Mitre serviced existing traps and applied gel in cabinet hinges. The second exterminator conducted a full evaluation, identified a hole in the dishwasher, found mouse feces in the entry and bedroom closets, and recommended sealing entry points like a cabinet trough with steel wool.

33. Juan Mitre returned on April 10 and April 24, 2025, but only to set traps and apply gel, without addressing other issues identified by the previous exterminator.

34. On April 17, 2025, Plaintiff emailed management emphasizing, "I was diagnosed with asthma, so Local Law 55 applies."

35. On April 24, 2025, Plaintiff was hospitalized due to an allergic reaction caused by exposure to mouse feces in the entry closet.

36. Around May 2, 2025, Plaintiff returned to Housing Court to report that the mouse infestation and defective self-closing door had not been resolved per Integrated Pest Management practices. A return date was set for May 15, 2025.

37. On May 13, 2025, Defendant Julio Del Orbe submitted an affidavit stating that all required violations had been cured and that "Plaintiff offers no evidence that any violations remain."

38. The affidavit claimed a licensed exterminator had visited three times and that "no roaches or mice have been observed" since the original court order.

39. However, on May 14, 2025, an HPD Open Violation Summary confirmed that the mouse infestation had not been resolved.

40. On May 15, 2025, Judge Gonzalez again ordered remediation of the mouse infestation and set a new access date of May 22, 2025.

41. Around May 16, 2025, Plaintiff saw the Defendant Julio Del Orbe's affidavit and exhibits, which included statements and a photograph taken inside her apartment without authorization.

42. Around May 20, 2025, Plaintiff submitted a motion for sanctions with supporting documentation, contesting false or misleading statements in Defendant's affidavit—such as claims of complete remediation, familiarity with Plaintiff. Defendant also stated, "I have been in her apartment", which suggests multiple entry and Plaintiff has only authorized Defendant's entry into her apartment once (sometime in February 2025 to address an HVAC issue).

43. On May 22, 2025, exterminator Juan Mitre returned to set traps and apply gel in the kitchen and bathroom. He did not service the entry and bedroom closets or seal the identified cabinet trough. Maintenance also never inspected the dishwasher for entry points.

44. As of the date of this affidavit, the mouse infestation has not been remediated.

45. As of the date of this affidavit, the door sweep remains too low. When the door is opened more than 45 degrees, the sweep bends and prevents the door from closing automatically, in violation of self-closing door requirements.

46. Around June 2, 2025, Plaintiff was provided a new key card for building access.

47. On June 24, 2025, Defendant Julio Del Orbe submitted a second affidavit reiterating that all violations had been resolved, while escalating false statements. These filings appear intended to discredit Plaintiff's claims, delay remediation, and support adverse legal action.

48. Plaintiff has suffered emotional distress—including anxiety, fear for her health and safety, and sleep disturbances—due to Defendant's false claims, continued exposure to allergens, and prolonged failure to ensure a habitable living environment.

49. On June 19 and June 26, 2025, Plaintiff asked exterminator Juan Mitre whether he would perform HEPA vacuuming or seal the cabinet trough. On June 19, he said he believed it was being handled; on June 26, he stated that such tasks were outside his responsibility.

50. Plaintiff emailed Exterminator Juan Mitre's comments to building management.

51. Although Plaintiff did not explicitly use the phrase "reasonable accommodation" in her communications, her repeated notifications to building management regarding her diagnosed asthma, allergic rhinitis, and allergy to mice — along with her specific requests for interventions such as licensed extermination, sealing of entry points, and air quality improvements — constituted implicit and legally sufficient requests for reasonable accommodation under applicable housing laws. Moreover, many of the requested actions were later ordered by the Housing Court, reinforcing their necessity and reasonableness.

52. Plaintiff possesses substantial documentary evidence supporting the factual allegations herein, including medical records, email communications with building management, housing court filings, inspection reports, and photographs

## CAUSES OF ACTION

### *Count One – Violation of 42 U.S.C. § 3604(f)*

53. Plaintiff is a person with a disability as defined by the Fair Housing Act, specifically asthma and rodent allergy, which substantially limits major life activities.

54. Plaintiff requests for proper pest remediation and evaluation of moisture levels impacting walls that have experienced leaks in the apartment constitute requests for reasonable accommodations.

55. Defendant Julio Del Orbe, acting as the landlord's agent and with knowledge of Plaintiff's disability, intentionally made false representations in sworn court documents regarding the remediation of the mouse infestation.

56. Defendants' actions denied Plaintiff the benefits of reasonable accommodation by interfering with or misrepresenting compliance efforts, and contributed to the ongoing presence of hazardous conditions.

57. Defendants' conduct constitutes unlawful housing discrimination in violation of 42 U.S.C. § 3604(f)(2), which prohibits denying housing rights based on disability or failure to reasonably accommodate.

***Count Two – Retaliation Under the Fair Housing Act (42 U.S.C. § 3617)***

58. Plaintiff engaged in protected activity under the Fair Housing Act by filing an HP proceeding and requesting reasonable accommodations based on her disability.

59. In response, Defendants retaliated against Plaintiff by submitting materially false affidavits to the court, as well as unauthorized photographs.

60. The second affidavit Defendant Julio Del Orbe signed is connected to a cross-motion based on that misinformation, and continuing to deny court-ordered remediation.

61. These false statements mischaracterized the services rendered, misled the court, and were intended to suppress Plaintiff's assertion of her rights under the FHA.

62. Defendants' conduct constitutes retaliation in violation of 42 U.S.C. § 3617, which prohibits coercion, intimidation, threats, or interference with any person exercising FHA rights.

***Count Three – Abuse of Process***

63. Defendant used legal process (affidavits in litigation and cross-motion filings) for an ulterior purpose: to mislead the court into denying Plaintiff full relief, or to build a false record to support eviction in a nonpayment case.

64. The process was not used to pursue justice, but rather to punish Plaintiff for asserting her housing and disability rights.

65. This conduct constitutes abuse of process under New York common law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a) Declare that Defendants' actions violated the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617, by discriminating against Plaintiff on the basis of disability and retaliating against her for exercising protected rights;

b) Enjoin Defendants from further retaliation, misrepresentation, or interference with Plaintiff's rights under the Fair Housing Act;

c) Order Defendants to take all affirmative steps necessary to ensure compliance with the Fair Housing Act, including but not limited to truthful representation in future proceedings and adherence to court-ordered accommodations;

d) Award compensatory damages in the amount of $100,000,000 for emotional distress, humiliation, physical harm (including Plaintiff's hospitalization), loss of the quiet enjoyment of her home, and continued exposure to hazardous and unlawful housing conditions;

e) Award punitive damages for Defendants' willful, wanton, and malicious conduct;

f) Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

g) Grant any other relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 30, 2025.

Aida R. Gil
Respondent, Pro Se
ARG383@GMAIL