UNITED STATES DIS.ICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/18/26___
```

AIDA R. GIL,

                    Plaintiff,

          -against-

605 WEST 42ND OWNER LLC, et al.,

                    Defendants.

1:25-cv-5396 (MKV)

ORDER VACATING TEMPORARY
RESTRAINING ORDER AND
DENYING PRELIMINARY INJUNCTION

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Aida Gil, proceeding *pro se*, brings the above-captioned action asserting claims of housing discrimination on the basis of disability and a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), among other claims, against her landlord Defendant 605 West 42nd Owner LLC, its parent company, and a number of individuals [ECF No. 14 ("AC")]. The New York City Civil Court, New York County, Housing Part has ruled that Plaintiff should be evicted for failing to pay her rent [ECF No. 32-1 (the "Housing Court Order") at 12]. Before this Court is Plaintiff's motion for a preliminary injunction staying her eviction pending resolution of this action [ECF Nos. 27 ("Mot."), 28 ("Mem."), 35, 36, 42, 43].

Upon receipt of Plaintiff's application for emergency relief, the Court issued a temporary restraining order to preserve the status quo until the Court had an opportunity to pass upon the merits of the motion for a preliminary injunction [ECF No. 29 ("TRO and Scheduling Order")]. The Court thereafter held a hearing at which the parties had an opportunity to be heard, and briefly extended the TRO, without objection, in order to review issues raised by the parties for the first time at and after the hearing [ECF No. 41]. For the reasons set forth below, the TRO is VACATED and the motion for a preliminary injunction is DENIED.

## I.    PROCEDURAL HISTORY[1]

The litigation related to Plaintiff's eviction began well before Plaintiff initiated this action. In particular, on January 14, 2025, Defendant 605 West 42nd Owner LLC commenced a landlord-tenant nonpayment proceeding against Plaintiff, captioned *605 West 42nd Owner LLC v. Aida R. Gil*, Civil Court of the City of New York, County of New York, Housing Part, Index No. L&T 300670-25/NY (the "Non-Payment Proceeding") [ECF Nos. 32 ¶ 3, 32-2 at 2, 39 at 2; *see* ECF No. 32-1]. Thereafter, on February 3, 2025, Plaintiff commenced an "enforcement proceeding," before a different housing court judge, against Defendant 605 West 42nd Owner LLC and the Department of Housing Preservation and Development ("HPD"), seeking various repairs, captioned *Aida Rosario-Gil v. 605 West 42nd Owner LLC*, Index No. LT-000203-25/NY (the "Enforcement Proceeding") [ECF Nos. 35 at 14, 35-4 at 4–6].

On June 3, 2025, Plaintiff filed a complaint in this District against the judge presiding over the Non-Payment Proceeding, alleging violations of the Americans with Disabilities Act and 42 U.S.C. § 1983 [*Gil v. Ortiz*, 25-cv-4748 (LTS), ECF No. 1]. On June 30, 2025, Plaintiff filed a motion for a temporary restraining order "to stay" an upcoming trial in the Non-Payment Proceeding in housing court [*Gil v. Ortiz*, 25-cv-4748 (LTS), ECF No. 11]. Chief Judge Swain issued an order denying Plaintiff's motion for a temporary restraining order the day it was filed [*Gil v. Ortiz*, 25-cv-4748 (LTS), ECF No. 12]. Plaintiff later voluntarily dismissed that case [*Gil v. Ortiz*, 25-cv-4748 (LTS), ECF Nos. 14, 15].

On June 30, 2025, the same day Chief Judge Swain denied relief in *Gil v. Ortiz*, 25-cv-4748 (LTS), Plaintiff, proceeding *pro se*, initiated this action by filing a complaint against

---

[1] Insofar as this Procedural History contains facts relevant to the Court's Conclusions of Law (including all facts about the history of the housing court litigation, which are undisputed) such facts are incorporated into the Court's Findings of Fact, pursuant to Federal Rule of Civil Procedure 52(a), below. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Winters v. Lavine*, 574 F.2d 46, 54 (2d Cir. 1978).

Defendants 605 West 42nd Owner LLC (her landlord), The Moinian Group (the parent company of the landlord), and Julio Del Orbe (a building manager) [ECF No. 1 (the "Original Complaint" or "Compl.")].  In the Original Complaint, Plaintiff asserted a claim of disability discrimination under the Fair Housing Act, 42 U.S.C. §§ 3604 *et seq.* ("FHA"), a claim of retaliation under the FHA, and "abuse of process under New York common law."  Compl. ¶¶ 53–65.  Chief Judge Swain granted Plaintiff leave to proceed *in forma pauperis* [ECF No. 5], and the case was later reassigned to this Court's docket on August 11, 2025.  The next day, August 12, 2025, the Court issued an Order of Service [ECF No. 7].

In the interim, in the Enforcement Proceeding, "the parties entered into" a "Consent Order" pursuant to which 605 West 42nd Owner LLC "agreed to correct" certain violations [ECF No. 35-4 at 4–6 ("Enforcement Proceeding Order") at 1].  Plaintiff later represented that two violations had not been corrected and moved for sanctions on the ground that, according to Plaintiff, Julio Del Orbe had "engaged in a pattern" of making false representations to the court.  Enforcement Proceeding Order at 2.  The presiding judge, Hon. Alberto Gonzalez, concluded that there were no longer any outstanding violations, denied the motion for sanctions, and dismissed the Enforcement Proceeding on July 29, 2025.  *Id.* at 2–3.

Thereafter, in this case, on October 31, 2025, Defendants 605 West 42nd Owner LLC, The Moinian Group, and Julio Del Orbe, were served with the Original Complaint, pursuant to the Order of Service [ECF Nos. 11, 12, 13].  On November 12, 2025, Plaintiff filed the Amended Complaint [ECF No. 14 ("AC")], adding new allegations, claims, and defendants.  The only new defendant who has thus far appeared in this action is Defendant Juan Mitre, an exterminator, who performed some of the remediation services in Plaintiff's apartment.  *See* AC ¶ 62.

In the Amended Complaint, Plaintiff asserts claims for: (1) disability discrimination under the FHA, *see* AC ¶¶ 46[2]–49 ("Count I"); (2) retaliation under the FHA, *see id.* ¶¶ 50–61 ("Count II"); (3) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), ¶¶ 58–67 ("Count III"); (4) violation of the Rehabilitation Act, 29 U.S.C. § 794, *see id.* ¶¶ 68–75 ("Count IV"); violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), *see id.* ¶¶ 76–82 ("Count V"); and intentional infliction of emotional distress ("IIED"), *see id.* ¶¶ 83–86 ("Count VI").[3]

All of the defendants who have appeared have answered [ECF Nos. 21, 26]. None of the appearing defendants has moved to dismiss any of Plaintiff's claims at the pleading stage. Several of the defendants Plaintiff names in the Amended Complaint have not yet appeared [*see* ECF No. 24 (adjourning the Initial Pretrial Conference "to allow time for [the later-added] defendants to be served and appear"); *see also* ECF No. 25].

On April 21, 2026, the housing court judge presiding over the Non-Payment Proceeding, Judge Ortiz, issued a post-trial decision and order [ECF No. 32-1 (the "Housing Court Order")]. The housing court "awarded [to 605 West 42nd Owner LLC] a final judgment of possession and money judgment for $31,421.24 as all rent owed through November 30, 2025" against Plaintiff. Housing Court Order at 12 & n.2 (internal superscript omitted, explaining that the money judgment was calculated to reflect a "rent abatement" of $1,047.44 for the breaches of the warranty of

---

[2] The paragraphs of the Amended Complaint are misnumbered. The first six pages progress from paragraph 1 through paragraph 67. Following paragraph 67, Count I begins with a paragraph numbered 46. On page 8, Count II ends with a paragraph numbered 61, and, immediately below that, Count III begins with a paragraph numbered 58.

[3] Because Plaintiff is proceeding *pro se*, the Court will liberally construe the Amended Complaint to also assert claims for discrimination and retaliation under the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL"). However, as explained below, it is *res judicata* that Plaintiff's landlord, Defendant 605 West 42nd Owner LLC, has a legitimate nondiscriminatory, nonretaliatory reason for evicting Plaintiff, namely, Plaintiff's failure to pay her rent, and Plaintiff has expressly conceded that that reason is not a pretext for discrimination or retaliation. *See* Tr. at 24:3–4; *infra* at 23–25. As such, as detailed below, Plaintiff cannot show a likelihood of success on the merits of any discrimination or retaliation claim, and the Court, therefore, does not discuss the state-law analogs of her federal claims further in this opinion.

habitability that Plaintiff had established at the trial).  The state court also issued a "warrant of eviction" for "failure to pay" with an execution date of May 1, 2026. *Id.* at 12.

Three days later, on Friday, April 24, 2026, Plaintiff submitted to this Court an application for a temporary restraining order and a preliminary injunction "to prevent [her] imminent eviction scheduled for May 1, 2026," pending resolution of this action [ECF No. 28 ("Mem.") at 1, 4; *see* ECF No. 27 ("Mot.")].  That application for emergency relief was filed on the docket (and the Court received notice of the application) the following Monday, April 27, 2026.  That same day, the Court issued a temporary restraining order "to preserve the status quo" until the Court had an opportunity to "pass upon the merits" of Plaintiff's motion for a preliminary injunction [ECF No. 29 ("TRO and Scheduling Order" at 1)].  *See Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009).  The Court also set deadlines for the parties to file various submissions and scheduled a hearing.  *See* TRO and Scheduling Order at 1–2.

Pursuant to the Court's TRO and Scheduling Order, Defendants 605 West 42nd Owner LLC, The Moinian Group, and Julio Del Orbe timely filed a memorandum of law in opposition to Plaintiff's application for emergency relief, a declaration of counsel, and the Housing Court Order ruling that Plaintiff should be evicted for failing to pay rent [ECF Nos. 32 ("Kirkpatrick Decl."), 32-1 ("Housing Court Order"), 33 ("Opp.")].  They did not file any affidavits or other evidence.  Counsel for Defendant Juan Mitre, an exterminator, also filed a declaration making clear that Mitre has no ability either to evict Plaintiff or to stay her eviction [ECF No. 34 ("Kakoullis Decl.")].[4]  Plaintiff thereafter filed two additional declarations attaching hundreds of pages of exhibits [ECF Nos. 35 ("Pl. First Supp. Decl."), 36 ("Pl. Second Supp. Decl.")].  The parties also filed witness

---

[4] At the hearing on Plaintiff's application for emergency relief, Plaintiff conceded that she is not seeking a TRO or PI as to Mitre.  *See* Tr. at 34:4–6.  No other defendant has appeared.

lists in connection with the scheduled hearing on Plaintiff's motion for a preliminary injunction [ECF Nos. 37, 38].[5]

On Friday, May 8, 2026, the Court held a hearing on Plaintiff's application for emergency relief at which all appearing parties had an opportunity to be heard. *See generally* Tr.[6] Defendants 605 West 42nd Owner LLC, The Moinian Group, and Julio Del Orbe declined to cross-examine Plaintiff. Counsel for Defendant Mitre briefly cross-examined Plaintiff solely to establish that Mitre is not "the owner or property manager of [Plaintiff's] building," and, therefore, has no control over Plaintiff's eviction. Tr. at 13:20–25. Plaintiff agreed on the record at the hearing that Mitre is "not a party to [her] motion." *Id.* at 34:4–6.

At the hearing and thereafter, both Plaintiff and counsel for Defendants 605 West 42nd Owner LLC, The Moinian Group, and Julio Del Orbe raised issues that either had not been briefed in any detail in advance of the hearing or contradicted the parties' earlier positions. On May 8, 2026 and May 9, 2026, respectively, defense counsel filed an additional exhibit [ECF No. 39] and a "Correction and Clarification" letter [ECF No. 40]. Plaintiff filed two post-hearing submissions as well [ECF Nos. 42, 43]. The Court briefly extended the TRO [ECF No. 41], citing the Court's need to consider new issues the parties had raised and defendants' representation that they had "no objection to a brief extension." Tr. at 33:20–21.

---

[5] As the Court explained in its TRO and Scheduling Order, pursuant to the Court's Individual Rules of Practice in Civil Cases, the parties were required to submit any direct testimony by affidavit and, thereafter, submit a list of witnesses for cross-examination only. Plaintiff submitted a list stating that she intended to cross-examine defense counsel [ECF No. 37]. However, defense counsel did not purport to attest to any facts, and the defendants did not submit any affidavits constituting the direct testimony of any witnesses. As such, there were no defense witnesses for Plaintiff to cross-examine.

[6] At the hearing on Plaintiff's motion for a preliminary injunction, the Court directed Defendants to "order a copy of the transcript." Tr. at 34:18–19. However, it appears that Defendants have not done so, and the transcript of the hearing has not been filed on the docket.

## II.    FINDINGS OF FACT

Plaintiff acquired her apartment in 2018 through a lottery for low-income or subsidized housing.  *See* Mot., Ex. C; Pl. First Supp. Decl. ¶ 2; Housing Court Order at 4, 6; *see also* AC ¶ 27.  The building at 605 West 42nd Street "is an 80/20 rental building," meaning certain units are reserved for low-income housing pursuant to New York law, and contains "Section 8 Housing" pursuant to federal law [ECF No. 35-3 at 24].  AC ¶ 27.  Since her original lease, which was renewed several times, Plaintiff has been obligated to pay rent in excess of $2,000 per month [ECF No. 35-1 at 17].  *See* Housing Court Order at 2–3, 6–7.  Although she continues to live in the apartment, Plaintiff has not paid rent since September 3, 2024.  *Id.* at 6.

Plaintiff has been diagnosed with "Asthma" and "Eustachian Tube Dysfunction" and is "allergic to mice."  Pl. First Supp. Decl. ¶¶ 5, 6.  In her First Supplemental Declaration in support of her application for emergency relief, Plaintiff asserts that she first notified Defendants of her "health conditions and the need for remediation" via email in March 2021.  Pl. First Supp. Decl. ¶ 10.  However, the email in question, which Plaintiff submits as an exhibit, states only that "there has been a strong smell of smoke over the past few weeks," which is "giving [her] a literal headache," and requests that the building manager "discourage this" [ECF No. 35-1 at 34].  The Court finds, based on the evidence in the record at this stage, that Plaintiff first complained of mice and various other problems with her apartment on January 30, 2025 in an email to building management [ECF No. 35-1 at 35].  *See* Pl. First Supp. Decl. ¶ 11; Housing Court Order at 3–6.  In the January 30, 2025 email, Plaintiff also stated that she is "allergic to mice" and had "been experiencing respiratory issues" [ECF No. 35-1 at 35].[7]

---

[7] As explained below, *infra* n.12, these factual findings regarding the timing of Plaintiff's complaints to her landlord likely preclude her from establishing a likelihood of success on the merits of her discrimination and retaliation claims, since her landlord commenced the process to evict Plaintiff for nonpayment before Plaintiff provided it with notice of any disability or engaged in any protected activity.  *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 78 (2d Cir. 2021) (plaintiff must plausibly plead FHA violation based on "known circumstances"); *cf. Brady v. Wal-Mart Stores,*

The Court finds, pursuant to Federal Rule of Civil Procedure 52(a), that, as detailed above, the housing court judge in the Enforcement Proceeding determined that, as of July 29, 2025, there were no outstanding violations in Plaintiff's apartment and sanctions should not issue for purported false statements in housing court by and on behalf of Defendants.  *See* Enforcement Proceeding Order.  In addition, the Court finds, the housing court judge in the Non-Payment Proceeding determined that Plaintiff owes her landlord more than thirty-thousand dollars in rent and should be evicted, as of May 1, 2026, for failure to pay that rent.  *See* Housing Court Order.  The Court further finds that Plaintiff has appealed the decisions in both the Enforcement Proceeding and the Non-Payment Proceeding and, as such, the state proceedings are ongoing.  *See* Pl. First Supp. Decl. ¶ 75; Tr. at 23:9–10; *see id.* at 15:8–9.

### III.    CONCLUSIONS OF LAW

A preliminary injunction "is an extraordinary and drastic remedy," which a district court should not grant "unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  A preliminary injunction is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Rather, as Plaintiff acknowledges, *see* Mot. at 3; Mem. at 1; to obtain a preliminary injunction, she must carry the heavy burden of showing: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of equities tips in her favor; and (4) that the public interest would not be disserved by the issuance of an injunction.  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015); *see* Fed. R. Civ. P. 65(a); *Forest City Daly Hous., Inc. v. Town of N.*

---

*Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (noting, albeit in the context of employment discrimination, that a defendant who "act[s] without knowledge of a disability cannot be said to have discriminated based on that disability"); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (also in the context of employment discrimination, defendant cannot take retaliatory action before plaintiff engages in protected activity).

*Hempstead*, 175 F.3d 144, 149 (2d Cir. 1999).

### A. *Rooker-Feldman* and Principles of Abstention Foreclose Granting a Preliminary Injunction.

As explained below, Plaintiff has not carried her heavy burden to show that she is entitled to the "extraordinary and drastic remedy" of preliminary injunctive relief. *Moore*, 409 F.3d at 510. Before reaching that analysis, however, the Court concludes that principles of abstention foreclose issuing the preliminary injunction Plaintiff seeks. Plaintiff is requesting that a federal district court to issue an injunction staying enforcement of a state court order ruling that she should be evicted for failing to pay her rent. Granting that request would defy the principles of federalism and comity underlying the *Rooker-Feldman* doctrine and *Younger* abstention.

### 1. *Rooker-Feldman*

In explaining the *Rooker-Feldman* doctrine, the Second Circuit has stressed that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). Here, a state court has issued "a final judgment of possession" and a "warrant of eviction" based on Plaintiff's "failure to pay" rent the state court has determined, after a trial, that Plaintiff owes. Housing Court Order at 12. Notwithstanding her protestations to the contrary, in seeking a preliminary injunction staying her eviction from this Court, Plaintiff is, "in substance," appealing the judgment of the housing court that Plaintiff should be evicted for failing to pay her rent. *Hoblock*, 422 F.3d at 84.

In her written submissions in support of her motion for a preliminary injunction, Plaintiff stresses that, in this action, she asserts "independent federal statutory claims." Mem. at 2; Mot. ¶ 10. However, the *Rooker-Feldman* doctrine applies where a federal "claim is 'inextricably intertwined' with the state judgment." *Hoblock*, 422 F.3d at 86–87 (quoting *Exxon Mobil Corp.*

*v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 (2005)); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) (holding that the federal district court "d[id] not have jurisdiction over the[] elements of the respondents' complaints" based on "allegations [that were] inextricably intertwined with" the state court decision to deny relief); *See Babalola v. B.Y. Equities, Inc.*, 63 F. App'x 534, 535–36 (2d Cir. 2003). Here, issuing a preliminary injunction staying Plaintiff's eviction based on her federal claims of discrimination, retaliation, or civil RICO (or any other federal claim Plaintiff's submissions might be liberally construed to assert against the defendants in this case) "would necessitate an inquiry into the propriety of the eviction warrant issued by the housing court," and "[s]uch inquiry is clearly barred under the *Rooker–Feldman* doctrine. *Babalola*, 63 F. App'x at 536.

Plaintiff's arguments at the hearing on her motion for a preliminary injunction underscored this problem. Indeed, at the hearing, Plaintiff principally argued that the Housing Court Order ruling that she should be evicted for failing to pay her rent is incorrect for various reasons. *See, e.g.*, Tr. at 3:7–25, 6:7–8, 7:24–9:18, 21:9–12, 24:4–5. For example, the Court asked Plaintiff, in connection with her claims of discrimination and retaliation, whether she contends that "the position that [she is] being evicted because [she] didn't pay [her] rent is just a pretext?" *Id*. at 24:2–3. Plaintiff responded: "No. . . . I'm saying that I had valid claims *in my nonpayment case*," meaning the housing court litigation. *Id.* at 24:4–5 (emphasis added). In particular, Plaintiff argued that the housing court judge in the Enforcement Proceeding had incorrectly ruled that all problems with her apartment had been remediated based on incorrect information. *See id.* at 23:16–20. Similarly, in connection with her civil RICO claim, Plaintiff argued that the housing court judge was incorrect to reject Plaintiff's assertion that Julio Del Oribe had submitted false affidavits in the housing court proceedings, which assertion Plaintiff contends she now can substantiate. *Id.* at 3:7–25. Plaintiff also argued that the housing court judge in the Nonpayment

10

Proceeding had incorrectly "told [Plaintiff] that [she] didn't have jurisdiction" to hear FHA arguments." *Id.* at 21:9–12; *see id.* at 6:7–8.[8]  In short, Plaintiff's own arguments at the hearing made clear that she was, "in substance," attempting to appeal housing court decisions to a federal district court and that granting Plaintiff's motion for a preliminary injunction to stay her eviction would require this Court to reject specific state court rulings.  *Hoblock*, 422 F.3d at 86–87; *see Babalola*, 63 F. App'x at 536.

---

[8] Plaintiff also argued at length that she was denied a fair trial in housing court.  *See* Tr. at 7:24–9:18, 25:24–26:2.  At one point, Plaintiff stated that "*the reason* why [she] came" to federal court, *id.* at 7:24 (emphasis added), "is that within the context of [her housing] court case, [she] was not provided the ADA accommodations that would have allowed [her] to have a fair hearing," *id.* at 9:16–18.  Specifically, at the hearing on her motion for a preliminary injunction in this action, Plaintiff argued that, for her housing court trial, she was denied a transcription service as an accommodation for her "eustachian tube dysfunction" because "at that time [she] struggled with hearing." *Id.* at 8:3–21.  (The Court notes that Plaintiff did not request any such accommodation in connection with the hearing before this Court.  She appeared to hear and fully understand the proceedings, since she fully and ably participated in every colloquy.  Indeed, the Court commented at the hearing on Plaintiff's sophisticated grasp of the issues.  *See* Tr. at 6:22, 7:2.)

As noted above, before she filed this action, Plaintiff filed an action before Chief Judge Swain against the housing court judge in the Nonpayment Proceeding.  *See Gil v. Ortiz*, 25-cv-4748 (LTS).  Plaintiff sought a temporary restraining order "to stay her pending proceedings before Judge Frances Ortiz" [*Gil v. Ortiz*, 25-cv-4748 (LTS), ECF No. 12 at 1].  In that case, Plaintiff asserted claims under the Americans with Disabilities Act and 42 U.S.C. § 1983, based on allegations similar to those she raised at the hearing on her motion for a preliminary injunction in this case, including that she was denied the use of "assistive transcription technology" [*Gil v. Ortiz*, 25-cv-4748 (LTS), ECF No. 1 ¶ 6].  However, Chief Judge Swain immediately denied the motion for a temporary restraining order, and Plaintiff later voluntarily dismissed the case [*Gil v. Ortiz*, 25-cv-4748 (LTS), ECF Nos. 12, 14, 15].

The Court fully appreciates that Plaintiff is proceeding *pro se* and, as such, the Court must liberally construe Plaintiff's submissions to assert the strongest claims they suggest.  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).  However, particularly on a motion for emergency relief, the Court cannot construe Plaintiff's submissions to assert claims against nonparties, much less grant relief against nonparties.  *See United States v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992) ("a court generally may not issue an order against a non-party").  As the Court confirmed with Plaintiff on the record at the hearing, Plaintiff is not asserting, in this action, any claims—of disability discrimination or any other alleged violation of her rights—against the state court system.  *See* Tr. at 9:9–12 (the Court asking Plaintiff is she is asserting claims against "anybody involved in the [state] court system . . . in this case," and Plaintiff responding, "No.").  Rather, at this stage, she is seeking a preliminary injunction against her landlord, Defendant 605 West 42nd Owner LLC, to prevent it from proceeding with her court-ordered eviction.  *See id.* at 24:25–25:5 (Plaintiff confirming that "the defendants here are the people involved with [her] apartment" and "[n]ot the people involved with the court proceeding").  As such, the Court responded to Plaintiff's argument that she was denied ADA accommodations in the Nonpayment Proceeding by explaining that the defendants before this Court "didn't run the state court proceeding, they were just parties, just like you were." *Id.* at 26:8–9.  The Court further explained that it is not "empowered to sit in judgment on" whether the housing court wrongly denied Plaintiff's request for accommodations on a motion for a preliminary injunction in a case in which nobody involved in the state court system is a party. *Id.* at 26:14.

Thus, the Court repeatedly explained to Plaintiff that "if [she] believe[s] there is an error in what the housing court did, there are appellate rights in the state court system." *Id.* at 18:14–16; *see id.* at 4:2–9, 4:16–19; *id.* at 5:16–18; *id.* at 6:9–10, 6:20; *id.* at 7:8–13; 16:22–23; *id.* at 19:19–22 ("Ma'am, don't you see what you are doing here before me is you are arguing about all the things you think the state court did wrong, procedurally and substantively, and that's what an appellate right is for."); 23:21–24 ("again, you are arguing to me the same exact kinds of issues that were before the housing court judge. You are asking me to basically say the housing court was wrong and that's what your appellate procedure is about."); *id.* at 26:12–14 ("your main grievance that you are arguing to me is about how the state court proceeding was conducted and that's not something I'm empowered to sit in judgment on"); *id.* at 27:6–7.

The Court also observed at the hearing that the *Rooker-Feldman* doctrine likely precludes granting her motion for a preliminary injunction. *See* Tr. at 7:6–7; *id.* at 16:22–23; *id.* at 20:8–9 ("*Rooker-Feldman* prevents me from doing what you are asking me to do"). The *Rooker-Feldman* doctrine applies where: (1) "the federal-court plaintiff . . . lost in state court," (2) the plaintiff complains of an injury caused by a state-court judgment, (3) the plaintiff "invite[s] district court review and rejection of that judgment," and (4) the "state-court judgment [was] 'rendered before the district court proceedings commenced.'" *Hoblock*, 422 F.3d at 85 (original brackets omitted) (quoting, *Exxon* 544 U.S. at 284); *see Dorce v. City of New York*, 2 F.4th 82, 101–02 (2d Cir. 2021). The Second Circuit has repeatedly stated that "the second requirement – that the plaintiff complains of an injury caused by a state-court judgment – is the core requirement from which the other *Rooker-Feldman* requirements derive." *Dorce*, 2 F.4th at 102 (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)).

As explained below, the Court now concludes that *Rooker-Feldman* precludes the Court from issuing a preliminary injunction to stay Plaintiff's eviction. The Court is not ruling that the

12

doctrine requires dismissal of Plaintiff's claims at this stage, however. In short, this Court cannot countermand Plaintiff's court-ordered eviction without effectively acting as a court of appeals for a "plaintiff [who] complains of an injury caused by a state-court judgment," which would violate "the core requirement" of *Rooker-Feldman*. *Dorce*, 2 F.4th at 101–02. However, *Rooker-Feldman* does not deprive the Court of jurisdiction over the underlying claims Plaintiff filed before any state court judgment was rendered.

Specifically, considering only Plaintiff's motion for a preliminary injunction, in contrast with this entire action, all four *Rooker-Feldman* requirements are met. First, Plaintiff "lost in state court" on precisely the question of whether she should be evicted. *Hoblock*, 422 F.3d at 85. The housing court expressly ruled that, as of May 1, 2026, Plaintiff should be evicted for failing to pay her rent. *See* Housing Court Order at 12.

As indicated above, the second and most crucial *Rooker-Feldman* requirement also applies to Plaintiff's motion for a preliminary injunction. *See Dorce*, 2 F.4th at 102. The "core" question is whether Plaintiff "complains of an injury caused by a state-court judgment." *Id.* Here, the state court-ordered eviction is precisely the injury Plaintiff "complains of" and seeks to avoid with her request for a federal preliminary injunction. *Id.*; *see* Mem. at 3 (describing the harm at issue in her motion for a preliminary injunction as the eviction and its collateral consequences).

Turning to the third *Rooker-Feldman* requirement, Plaintiff's request for a preliminary injunction staying her eviction plainly "invite[s] district court review and rejection of th[e] judgment" of the housing court that Plaintiff should be evicted for failing to pay her rent. *Hoblock*, 422 F.3d at 85. In her written submissions, Plaintiff asserts that she requests a preliminary injunction not to "seek appellate review of any state court judgment" but, instead, to "prevent ongoing and imminent violations of federal civil rights statutes," stressing her allegations of disability discrimination and retaliation under the FHA. Mem. at 1; *see id.* at 3. At the hearing,

13

she also cited her civil RICO claim as a basis for granting her motion for a preliminary injunction, arguing that this Court should stay her eviction because, Plaintiff contends, "there was fraud in [her housing court] cases." Tr. at 24:13–15; *see id.* at 3:2–21 (citing the FHA and "civil RICO" as the claims underlying her "motion for a stay of eviction," and arguing that the housing court was misled about remediations to her apartment).

However, as indicated in the discussion above, "elements" of Plaintiff's civil rights and RICO claims are "inextricably intertwined with" specific housing court decisions to deny relief. *Feldman*, 460 U.S. at 486. For example, this Court cannot stay Plaintiff's eviction on the ground that she is likely to succeed on the merits of her discrimination claim without rejecting the housing court's determination that Plaintiff should be evicted for failing to pay her rent. *See Babalola*, 63 F. App'x at 536. There are similar issues with the other claims.

Specifically, "to make out a prima facie case of discrimination on the basis of disability in violation of FHA," the plaintiff must show, *inter alia*, "circumstances giving rise to an inference of discrimination on the basis of the" plaintiff's disability. *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 152 (2d Cir. 2014). Thereafter, "the defendants [can] come forward with 'a legitimate, nondiscriminatory reason for their decision.'" *Id.* (quoting *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002)). "The ultimate burden of proof remains on the plaintiff to show that 'the defendants intentionally discriminated against [her] on a prohibited ground.'" *Id.* (quoting *Regional Economic Community Action Program*, 294 F.3d at 49). Wrongful failure to pay rent is a "legitimate, nondiscriminatory reason" to evict a tenant. *Id.* The housing court ruled that Plaintiff should be evicted for that reason. *See* Housing Court Order at 12. Any decision by this Court to stay Plaintiff's eviction as a remedy for discrimination or retaliation would necessarily entail rejecting the judgment of the housing court that Plaintiff wrongly failed to pay her rent. *See Babalola*, 63 F. App'x at 535 ("Before this Court could find

14

that plaintiff has been the victim of a discriminatory conspiracy to wrongfully evict her from her apartment, the Court would have to hold that the state courts erred in issuing a warrant for eviction based on nonpayment of rent . . . .").

The same analysis applies to Plaintiff's claims of retaliation under the FHA and violation of the Rehabilitation Act. Both such claims are evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which establishes that a defendant cannot be held liable if it comes forward with a legitimate, nonretaliatory, nondiscriminatory reason for its action and the plaintiff cannot show that such reason is merely a pretext for retaliation or discrimination. *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003); *Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 617 (S.D.N.Y. 2011); *Wilson v. Wilder Balter Partners, Inc.*, No. 13-cv-2595 (KMK), 2015 WL 685194, at *7 (S.D.N.Y. Feb. 17, 2015). Significantly, on the record at the hearing on Plaintiff's motion for a preliminary injunction, the Court specifically asked Plaintiff whether she contends that failure to pay rent is merely a "pretext" for a discriminatory or retaliatory eviction, and Plaintiff answered: "No." Tr. at 24:4.[9]

Similarly, Plaintiff argues that her civil RICO claim provides a basis for staying her eviction. *See* Tr. at 3:2–21, 24:13–15. She alleges that her RICO claim arises out of "a series" of false "certifications" and affidavits about "remediation in [her] apartment." *Id.* at 3:7–21. However, as the Court pointed out on the record at the hearing on Plaintiff's motion for a preliminary injunction, the housing court already denied a motion for sanctions in which Plaintiff alleged a "pattern" of making false representations to the housing court. Enforcement Proceeding Order at 2–3; *see* Tr. at 4:2–5. As such, the allegations underlying Plaintiff's civil RICO claim are "inextricably intertwined" with a specific housing court decision denying relief. *Feldman*, 460

---

[9] As noted above, Plaintiff also argued at the hearing that the state court system violated her rights under the ADA, but this Court cannot issue a preliminary injunction based on an unpled claim against a nonparty. *See supra* n.8.

15

U.S. at 486.  At the hearing, Plaintiff asserted, in connection with her RICO claim, that she was "not asking [this Court] to say that the housing court was wrong," but, rather "to recognize that there was fraud in [her housing court] cases."  Tr. at 24:13–15.  However, the Second Circuit has held that the *Rooker-Feldman* doctrine applies where the federal district court would have to review and reject a state court judgment, even though the plaintiff alleges that the state court judgment was procured by fraud.  *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (applying *Rooker-Feldman* where the *pro se* plaintiff argued the defendants "had engaged in fraud during the foreclosure proceedings").

The fourth requirement of the *Rooker-Feldman* doctrine is that the "state-court judgment [was] 'rendered before the district court proceedings commenced.'"  *Hoblock*, 422 F.3d at 85.  Plaintiff initiated this *action*, by filing the Original Complaint, before a state-court judgment was rendered [ECF No. 1].  As such, *Rooker-Feldman* does not apply to require dismissal of this action.  *See Hoblock*, 422 F.3d at 85.

However, the fourth requirement of the *Rooker-Feldman* doctrine is met with respect to Plaintiff's motion for a preliminary injunction.  The housing court ruled that Plaintiff should be evicted for failing to pay her rent *before* Plaintiff commenced "the district court proceedings" to stay her eviction.  *Id.*  Indeed, "the district court proceeding[]" at issue here, Plaintiff's motion for a preliminary injunction, is entirely an effort to prevent the court-ordered eviction.  *Id.*  Thus, the "core" principle of the *Rooker-Feldman* doctrine—that a federal district court lacks power to act as a court of appeals granting relief for "an injury caused by a state-court judgment"—precludes the Court from enjoining the eviction.  *Dorce*, 2 F.4th at 102.

A number of district courts in this Circuit have concluded that a "request for a TRO or preliminary injunction stopping [a federal plaintiff's state-court-ordered] eviction is . . . barred under the *Rooker-Feldman* doctrine." *Peters v. Caton Towers Owners Corp.*, No. 25-cv-4176

16

(RPK), 2025 WL 2653905, at *1 (E.D.N.Y. Sept. 16, 2025).  Indeed, as one judge explained, "when state-court losers bring . . . disability and discrimination claims seeking to enjoin evictions in federal court, they have been consistently barred under the *Rooker-Feldman* doctrine . . . ." *Milhaven v. Country Vill. Apartment*, No. 19-cv-2384 (KMK), 2020 WL 5663380, at *2 (S.D.N.Y. Sept. 23, 2020) (brackets omitted); *see Babalola*, 63 F. App'x at 535; *Kristopher v. Stone St. Props., LLC*, No. 13-cv-566 (RJS), 2013 WL 499752, at *2 (S.D.N.Y. Jan. 29, 2013).  Moreover, some courts in this Circuit have concluded that, in certain circumstances, *Rooker-Feldman* applies to preclude relief even though the federal court action commenced before the state court issued the judgment from which the plaintiff seeks relief.  *See Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009) (Bianco, J.) ("The language of *Hoblock* suggests that, under the circumstances of this case, because plaintiffs did not complain of the injuries stemming from the allegedly illegal eviction until after the state court's issuance of the warrant of eviction (and the court's subsequent refusal to vacate that judgment), the unlawful eviction claim is barred by *Rooker-Feldman*."); *Lomnicki v. Cardinal McCloskey Servs.*, No. 04-cv-4548 (KMK), 2007 WL 2176059, at *6 (S.D.N.Y. July 26, 2007).

Accordingly, the Court concludes that because Plaintiff's motion for a preliminary injunction is effectively a request to reverse a previously-issued state-court judgment that she should be evicted, the *Rooker-Feldman* doctrine precludes relief.  *See Hoblock*, 422 F.3d at 85; *Reyes*, 661 F. Supp. 2d at 273; *Milhaven*, 2020 WL 5663380, at *2; *Peters*, 2025 WL 2653905, at *1–2; *Kristopher*, 2013 WL 499752, at *2.

### 2. *Younger*

Assuming, *arguendo*, that the *Rooker-Feldman* doctrine does not preclude the Court from granting a preliminary injunction to stay Plaintiff's state-court-ordered eviction, the Court concludes that abstention principles strongly counsel against granting such relief.  In particular,

17

"[a]s the Supreme Court emphasized in *Younger v. Harris*, 401 U.S. 37, 43–45 (1971), federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). "This principle of abstention is grounded in interrelated principles of comity and federalism." *Id.* The Second Circuit has explained that these principles require federal courts to "give states [the first] opportunity to correct their own mistakes." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002); *see Spargo*, 351 F.3d at 75.

The Second Circuit long held that "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351 F.3d at 75. However, the Supreme Court thereafter held that these factors are "not dispositive," but are, "instead, *additional* factors appropriately considered by the federal court before invoking *Younger*." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013) (emphasis in original). After *Sprint*, it appears that *Younger* abstention is limited to "three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint*, 571 U.S. at 71).

Here, it is not entirely clear that this case involves any of the exceptional circumstances requiring the Court to abstain from exercising jurisdiction over Plaintiff's claims.[10] *See Milhaven*,

---

[10] There is a colorable argument that some of Plaintiff's claims, or arguments for preliminary injunctive relief, fall within "*Younger's* third category," which the Second Circuit has described "as encompassing . . . challenges to '*the way* that New York courts manage their own . . . proceedings.'" *Gristina v. Merchan*, 131 F.4th 82, 91 (2d Cir. 2025) (emphases in original) (quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022)), *cert. denied*, 146 S. Ct. 248, 223 L. Ed. 2d 90 (2025); *see Abbatiello v. Wells Fargo Bank, N.A.*, 2015 WL 5884797, at *4 (E.D.N.Y. Oct. 8, 2015)

2020 WL 5663380, at *8; *Aponte v. Diego Beekman M.H.A. HDFC*, No. 16-cv-8479 (JPO), 2019 WL 316003, at *5 (S.D.N.Y. Jan. 24, 2019).  Thus, as with *Rooker-Feldman*, the Court concludes that dismissal of this action pursuant to *Younger* would be inappropriate at this stage, since federal courts generally have an obligation to exercise jurisdiction where it exists.  *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012).  A preliminary injunction, by contrast, is "never awarded as of right."  *Winter*, 555 U.S. at 24.  The principles underlying *Younger* militate against awarding one here.

As an initial matter, the parties agreed on the record at the hearing on Plaintiff's motion for a preliminary injunction that Plaintiff has filed an appeal of the Housing Court Order and, as such, "the state court proceedings are still ongoing."  Tr. at 23:9–10; *see id.* at 15:8–9.  Moreover, as explained in detail above, in arguing that the Court should grant her motion for a preliminary injunction, Plaintiff principally argued at the hearing that the Housing Court Order is unsound for various reasons.  *See* Tr. at 3:7–25, 6:7–8, 7:24–9:18, 21:9–12, 24:4–5.  For example, Plaintiff argues that the housing court judge in the Nonpayment Proceeding incorrectly "told [Plaintiff] that [the housing court] didn't have jurisdiction" to consider Plaintiff's arguments that her eviction would violate the FHA.  *Id.* at 21:9–12.

There is indeed authority for the proposition that Plaintiff was entitled to "raise her claim that Defendants violated the Fair Housing Act as an affirmative defense to the eviction proceeding."  *Kristopher*, 2013 WL 499752, at *4 (Sullivan, J.) (citing, *inter alia*, N.Y. Real Prop. Acts. § 743); *see Committed Cmty. Assocs. v. Croswell*, 171 Misc. 2d 340, 343, 659 N.Y.S.2d 691, 693 (2nd Dep't 1997) ("RPAPL 743 provides that 'the answer [in an eviction proceeding] may contain any legal or equitable defense, or counterclaim'"), *aff'd*, 250 A.D.2d 845, 673 N.Y.S.2d

---

("Plaintiffs seek injunctive relief relating to the same property that is the subject matter of the underlying state court action; therefore the third *Sprint* prong applies.").  However, that argument has not been fleshed out here.

708 (1998); *Sierra v. City of New York*, 528 F. Supp. 2d 465, 468 (S.D.N.Y. 2008) ("the Fair Housing Act is expressly enforceable in both state and federal courts"); 42 U.S.C. § 3613(a)(1)(A); *Tell v. 9 W. 73rd St. LLC*, No. 24-cv-7161 (VEC), 2026 WL 366806, at *3 (S.D.N.Y. Feb. 9, 2026); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 323 (E.D.N.Y. 2012) ("pursuant to RPAPL § 743, where, as here, federal disability claims have been classified as 'defenses' in eviction proceedings, housing courts have jurisdiction to hear them").   However, Plaintiff's argument that the judge in the Nonpayment Proceeding erred does not weigh in favor of granting her motion for a preliminary injunction.   Rather, the principles underlying *Younger* counsel "[g]iving [the] state[] 'the first opportunity'" to correct any "mistake[]" on that score.  *Spargo*, 351 F.3d at 75 (quoting *Diamond "D" Constr.*, 282 F.3d at 200).   As such, as the Court explained at the hearing, Plaintiff "can raise" any error by the housing court judge in refusing to entertain defenses based on alleged discrimination and retaliation "in [her] appeal."  Tr. at 21:14; *see id.* at 18:14–16 ("if you believe there is an error in what the housing court did, there are appellate rights in the state court system").   Moreover, as the Court pointed out, and Plaintiff agreed on the record at the hearing, "there is a mechanism for [Plaintiff] to seek a stay [of her eviction] in the state court system."  *Id.* at 19:23–24; *see id.* at 6:9–14.

Thus, even after *Sprint*, courts in this Circuit have invoked *Younger* to deny a request for "federal court intervention in [a plaintiff's] state court eviction proceedings."  *Brown v. RXR Soyo Exalta, LLC (Sawyer Place)*, No. 24-cv-4250 (LTS), 2024 WL 3316011, at *2 & n.2 (S.D.N.Y. June 10, 2024) ("When a plaintiff seeks injunctive relief relating to the same property that is the subject matter of the underlying state court action, *Younger* abstention applies.") (quotation marks,

citation, and brackets omitted); *see Ochei v. Lapes*, No. 19-cv-3700 (CM), 2020 WL 528705, at *4 (S.D.N.Y. Jan. 31, 2020); *Abbatiello*, 2015 WL 5884797, at *4.[11]

### B. The Anti-Injunction Act Bars Relief.

The Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "This Act presents an absolute ban on enjoining any state court proceeding, unless the facts of the case bring the matter within one of the three narrowly constrained exceptions." *Milhaven*, 2020 WL 5663380, at *9 (quoting *Kristopher*, 2013 WL 499752, at *3). "Courts in this Circuit have repeatedly held that the Anti–Injunction Act bars a federal court from enjoining state-court eviction proceedings." *Kristopher*, 2013 WL 499752, at *3 (citing *Allen v. N.Y. City Hous. Auth.*, No. 10-cv-168 (CM), 2010 WL 1644956, at *3 (S.D.N.Y. Apr. 20, 2010) (collecting cases)); *see Watkins v. Ceasar*, 88 F. App'x 458, 459 (2d Cir. 2004); *Ochei*, 2020 WL 528705, at *4.

Pertinent here, the Anti-Injunction Act "applies when the requested injunction would either stay the ongoing state proceedings or prevent the parties from enforcing an order that has already issued." *Ochei*, 2020 WL 528705, at *3 (quoting *Abbatiello*, 2015 WL 5884797, at *5); *see Pathways, Inc. v. Dunne*, 329 F.3d 108, 113 (2d Cir. 2003) ("The Anti-Injunction Act, subject to [its] exceptions, prohibits injunctive relief that would interfere, directly or indirectly, with pending state proceedings, or that would 'prohibit utilization of the results of a completed state proceeding.'") (quoting Atl. *Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287

---

[11] "The more flexible *Colorado River* [abstention] doctrine" likewise could "counsel in favor" of denying Plaintiff's motion for a preliminary injunction staying her eviction. *Aponte*, 2019 WL 316003, at *5; *see Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Pursuant to that doctrine, "a federal court may abstain from exercising jurisdiction" in certain circumstances when the parties are engaged in "parallel state-court litigation" and various factors weigh in favor of abstention, including "whether the controversy involves a res over which one of the courts has assumed jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012).

(1970)).  Thus, the Act precludes issuing not only a preliminary injunction to stay housing court proceedings, but also a preliminary injunction "to prohibit [a landlord] from prosecuting the eviction."  *Sierra*, 528 F. Supp. 2d at 469; *see Greer v. Mehiel*, No. 15-cv-6119(AJN), 2016 WL 828128, at *4 (S.D.N.Y. Feb. 24, 2016) (Nathan, J.) (ruling that the Anti-Injunction Act "bars the Court from . . . staying the warrant of eviction").  As such, "injunctive relief to stop [Plaintiff's] eviction is prohibited by the Anti-Injunction Act unless one of the Act's three exceptions applies." *Peters*, 2025 WL 2822614, at *3.

The first exception permits an injunction that is "expressly authorized by Act of Congress." 28 U.S.C. § 2283.  "[I]t is settled law that the exception comes into play only when a statute 'clearly creating a federal right or remedy enforceable in a federal court of equity[] could be given its intended scope only by the stay of a state court proceeding.'"  *Sierra*, 528 F. Supp. 2d at 468 (quoting *Mitchum v. Foster*, 407 U.S. 225, 239 (1972)).  Courts in this Circuit have consistently ruled that the first exception does not apply where, as here, a plaintiff seeks to stay an eviction based on Fair Housing Act claims, "[s]ince the Fair Housing Act is expressly enforceable in both state and federal courts."  *Id.*; *see Milhaven*, 2020 WL 5663380, at *9 ("District courts have squarely rejected any argument that the first exception applies to claims brought under the FHA"); *Greer*, 2016 WL 828128, at *4; *Kristopher*, 2013 WL 499752, at *3.  The same logic applies to a claim under the Rehabilitation Act.  *See Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 323 (E.D.N.Y. 2012) (citing *Crossroads Apartments Assocs. v. LeBoo*, 152 Misc. 2d 830, 578 N.Y.S.2d 1004 (N.Y. City Ct. 1991), for the proposition that claims for violations of both "the Rehabilitation Act and FHA" can be asserted in housing court "as affirmative defenses").  Further, a number of courts in this Circuit have also rejected the argument that a "RICO claim qualifies" for the first exception. *Gomez v. Yisroel*, No. 21-cv-2172 (PAC), 2021 WL 2138462, at *4 (S.D.N.Y. May 26, 2021); *see Ozuzu v. Greenpoint Mortg. Funding*, No. 19-cv-03783 (AMD),

22

2020 WL 5658776, at *6 (E.D.N.Y. Sept. 23, 2020); *Ocampo v. Countrywide Home Loans, Inc.*, 2020 WL 1532392, at *6 (D. Conn. Mar. 31, 2020).

The second exception permits an injunction "where necessary in aid of [the federal court's] jurisdiction." 28 U.S.C. § 2283.  This exception "is triggered only if 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'"  *Allen*, 2010 WL 1644956, at *4 (quoting *Atl. Coast Line R.R.*, 398 U.S. at 295).  This exception does not apply to this case.  The Court need not stay Plaintiff's eviction to proceed with adjudicating her claims in the ordinary course and awarding damages if she ultimately prevails.  *See id.*; *Kristopher*, 2013 WL 499752, at *4.

The third exception permits an injunction "to protect or effectuate [the federal court's] judgments." 28 U.S.C. § 2283.  The exception "only applies where an issue has been previously presented to and decided by the federal court." *Allen*, 2010 WL 1644956, at *4 (citing *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261–62 (2d Cir. 1999)).  "Because this litigation is in its nascent stages and the Court has yet to issue any orders, the third exception is inapplicable." *Kristopher*, 2013 WL 499752, at *4; *see Milhaven*, 2020 WL 5663380, at *10.

Accordingly, the Court concludes that the Anti-Injunction Act precludes the Court from staying Plaintiff's eviction.

### C. Plaintiff Has Not Shown a Likelihood of Success on the Merits.

In all events, the Court concludes, Plaintiff has not shown a likelihood of success on the merits of any claim for which a stay of eviction might issue as a remedy.  As explained above, Plaintiff cannot prevail on her claims of discrimination and retaliation if there is a legitimate non-discriminatory, non-retaliatory reason for her eviction.  *See Olsen*, 759 F.3d at 152; *Wilson*, 2015 WL 685194, at *7–8; *Burris v. Hous. & Servs. Inc.*, No. 17-cv-9289 (JGK), 2023 WL 1966120, at

23

*11 (S.D.N.Y. Feb. 13, 2023).  Plaintiff has not paid her rent since September 2024.  *See* Housing Court Order at 6.  She expressly conceded on the record at the hearing on her motion for a preliminary injunction that "the position that [she is] being evicted because [she] didn't pay rent" is not merely "a pretext" for discrimination or retaliation.  Tr. at 24:2–4.  As such, Plaintiff cannot show a likelihood of success on the merits of her discrimination or retaliation claims.[12]

Plaintiff also has not shown a likelihood of success on the merits of her civil RICO claim. "Section 1962(c) of Title 18 makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'"  *Black v. Ganieva*, 619 F. Supp. 3d 309, 329 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). "To establish a violation of § 1962(c), *i.e.*, a substantive violation of the RICO statute, a civil plaintiff 'must show that [s]he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Id.* (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)).  Plaintiff has not clearly alleged, much less offered any evidence, of the elements of a civil RICO claim.

Rather, in support her civil RICO claim, Plaintiff principally argued that non-party HPD submitted false certifications and Defendant Julio Del Oribe submitted false affidavits to the

---

[12] Moreover, as set forth in the Findings of Fact, the record before the Court reflects that Defendant 605 West 42nd Owner LLC commenced the process to evict Plaintiff before she notified it that she had a disability and sought accommodations.  Specifically, as explained above, the landlord commenced the Nonpayment Proceeding on January 14, 2025 [ECF No. 32-2 at 1].  Plaintiff contends that she first provided notice of her disability and need for accommodations in March 2021, but the evidence she submitted contradicts that contention.  Specifically, the March 2021 email that Plaintiff contends provided notice of her disability and need for accommodations is merely a complaint about smelling smoke [ECF No. 35-1 at 34].  On the record before the Court, Plaintiff first provided any notice of a disability and need for accommodations on January 30, 2025, after the landlord had commenced its effort to evict her [ECF No. 35-1 at 35].  *See* Pl. First Supp. Decl. ¶ 11; Housing Court Order at 3–6. A defendant cannot be held liable for disability discrimination based on conduct that predates its knowledge of the disability.  *See Francis*, 992 F.3d at 78; *cf. Brady*, 531 F.3d at 135. The same logic applies to alleged retaliatory action that predates protected activity.  *Cf. Slattery*, 248 F.3d at 95.

housing court about remediations to Plaintiff's apartment. *See* Tr. at 3:11–21. As the Court pointed out on the record at the hearing on Plaintiff's motion for a preliminary injunction, the housing court already rejected a motion for sanctions based on allegations that Julio Del Oribe had submitted false affidavits. *See id.* at 4:2–9. The allegations about nonparty HPD are not about "defendants' . . . conduct." *Black*, 619 F. Supp. 3d at 329. Moreover, even if this Court were to accept Plaintiff's contention that false certifications and affidavits were submitted to the housing court, Plaintiff has still fallen far short of establishing "numerous elements of a substantive RICO claim." *Id.* at 330. As such, Plaintiff has not shown a likelihood of success on the merits of her civil RICO claim.

Plaintiff also has not shown a likelihood of success on the merits of her other claims. Under New York law, it is exceedingly difficult to prevail on a claim for intentional infliction of emotional distress. *See Howell v. New York Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993) ("[O]f the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous."). On the record before the Court, Plaintiff has not shown that she is likely to establish that Defendants' efforts to evict her, which the housing court agreed should occur, were sufficiently outrageous for Plaintiff to prevail on a claim for intentional infliction of emotional distress. *See id.* While Plaintiff asserts that Defendants violated the Fair Credit Reporting Act by wrongly reporting that she had been evicted, the confusing statements in her Second Supplemental Declaration on this point fall far short of establishing a likelihood of success on the FCRA claim. *See* Second Supp. Decl. ¶¶ 46–61. Moreover, a preliminary injunction prohibiting Plaintiff's eviction is not an appropriate remedy for these claims, which are compensable by money damages. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) ("Where money damages are adequate compensation a

preliminary injunction should not issue."); 15 U.S.C. § 1681n (FCRA remedies statute providing for actual damages, punitive damages, and attorneys' fees).

Thus, even if a preliminary injunction staying Plaintiff's state-court-ordered eviction is not barred by the *Rooker-Feldman* doctrine, *Younger* abstention, or the Anti-Injunction Act, Plaintiff has not carried her burden to demonstrate that she is entitled to the extraordinary relief of staying her eviction while she litigates the claims she asserts in this action. *See Moore v*, 409 F.3d at 510.

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the TRO is VACATED and the motion for a preliminary injunction is DENIED.

The Clerk of Court respectfully is requested to terminate docket entry number 27.

**SO ORDERED.**

**Date:  May 18, 2026**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

26